### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| BRYAN K. WARREN, | ) |
| | ) |
|       Petitioner, | ) |
| | ) |
| v. | ) |
| | )   Civil Case No. 20-1275 |
| | ) |
| J.C. STREEVAL, | ) |
| Warden, United States | ) |
| Penitentiary Lee, Virginia | ) |
| | ) |
|       Respondent. | ) |

### ORDER AND OPINION

Before the Court is Petitioner Bryan K. Warren's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (D. 1). For the reasons set forth below, the Petition is DISMISSED.

### BACKGROUND

Petitioner is currently in the custody of the Federal Bureau of Prisons ("BOP") and housed at USP Lee in Pennington Gap, Virginia. (D. 17). In April 2019, Petitioner was sentenced by the Eastern District of Missouri to 180 months in prison for conspiracy to distribute and possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). (D. 9-1, p. 8). In October 2019, he was transferred to the Federal Correctional Institution in Pekin, Illinois ("FCI Pekin"). *Id.* at p. 12. Petitioner was at FCI Pekin when the events giving rise to this Petition occurred and when his § 2241 Petition was filed with this Court.

In October 2019, a prosecuting attorney in Warren County, Missouri, requested the Petitioner be transferred temporarily to state custody for a trial in December 2019. *Id.* at p. 33. On

1

December 19, 2019, Petitioner was transported by Warren County deputies from FCI Pekin to Warren County Detention Center for a court writ scheduled on December 20, 2019. *Id.* at p. 34. Prior to being transferred, Petitioner signed a BOP "Acknowledgement" regarding his release into state custody, which stated:

> I acknowledge that I am temporarily being transferred from federal to state custody for purpose of trial on state charges. I am aware that State officials are to return me to federal custody at the conclusion of my state trial.
>
> I am also aware that State officials should not release me into the community. If I am released by State authorities into the community, I am aware that my federal sentence will not run, and that I will not receive credit for my federal sentence for any period of time I am in the community following release by the State officials.
>
> If State officials release me or transfer me to any facility, agency, or person other than Federal, I agree to immediately call the following Bureau of Prisons official… at the designated federal institution in which I am presently incarcerated as indicated below.

(D. 9-1, p. 27). The "Acknowledgement" bore Petitioner's name, BOP register number, and signature; signature of a BOP staff witness; and the name and telephone number of the BOP official to be contacted if he was released. *Id.* On December 19, 2019, the deputy from Warren County who was transporting Petitioner also signed a "Release Authorization," which stated in bold: "**Warning!!! This inmate is to be returned to FCI Pekin and is not to be released from custody without written permission from the Warden.**" *Id.* at p. 28.

On December 21, 2019, state authorities released Petitioner pursuant to a state bond until his court date on January 15, 2020. *Id.* at p. 34. On December 23, 2019, FCI Pekin was notified that Petitioner had been inadvertently released on bond. *Id.* Immediately, FCI Pekin issued a "Notice of Escaped Federal Prisoner." *Id.* Petitioner was arrested by the United States Marshals Service ("USMS") in the St. Louis, Missouri area on January 8, 2020, and returned to FCI Pekin

on February 10, 2020. *Id.* at 37. At no point did Petitioner notify the BOP that he had been released from state custody.

FCI Pekin prepared an incident report charging Petitioner with "[e]scape from any secure/non secure facility" in violation of Prohibited Act Code 102 of the BOP's Inmate Discipline Program. *Id.* at p. 14. The incident report was initially reviewed by a Unit Discipline Committee ("UDC"), and due to the severity of the charges, the committee referred the charges to a Discipline Hearing Officer ("DHO"). *Id.* Prior to the DHO hearing, Petitioner was given notification of the charges and that he had the right to have a staff representative appear on his behalf and to call witnesses at the hearing, which he declined. *Id.*

In deciding Petitioner's case, the DHO considered the incident report; Petitioner's signed "Acknowledgement" that he would contact the BOP if the state released him; e-mails from the USMS regarding Petitioner's "escape" and arrest; and the following statements:

1) The e-mail from Mark Moore (USMS), which stated: "Warren is currently being held at Ste Genevieve County Jail on the Escape Notification from BOP. I intend to seek additional charges for Escape, along with Felon in Possession of a Firearm and Ammunition at a later date.
2) Petitioner's statement to investigating Lieutenant: "Why I am getting a shot, I don't remember doing anything."
3) Petitioner's statement during the UDC: "I am not guilty. Warren county jail staff told me that I was able to bond out and return on Jan. 15 for my court date and after conclusion of the case I would be sent back to the BOP. On Jan. 8, my attorney told me it was a mistake to turn myself in. I did."
4) Petitioner's statement to DHO: "I never escaped they let me go on bond."

(D. 9-1, p. 24).

While the DHO considered Petitioner's denial of escape because he was able to bond out, they ultimately found his testimony lacked credibility. *Id.* This was due to the fact that Petitioner claimed he turned himself back in when his attorney advised him that he been released by mistake, but he failed to provide any evidence in support of this claim, and the supporting documents from the USMS showed that he had been found by the USMS in possession of a weapon. *Id.* As a result,

the DHO found the greater weight of evidence established that Petitioner had committed the prohibited act of "escape" in violation of Code 102, and the following sanctions were imposed: (1) forfeiture of 41 days good time credit; (2) 80 days of non-vested good time credit; (3) 30 days of disciplinary segregation; (4) loss of 90 days commissary, email, and telephone privileges; and (5) a $76.70 monetary fine.

After exhausting the administrative process, Petitioner now petitions this Court under § 2241 for a writ of habeas corpus to vacate the sanctions imposed by the DHO, expunge the incident from his record, and order a security reclassification. Petitioner raises two issues in his *pro se* Petition:

(1) that an escape never took place because he was allowed to post bond; and

(2) that FCI Pekin did not have jurisdiction to issue an incident report while he was in the custody of a state facility. (D. 1).

Counsel was subsequently appointed to represent Petitioner on January 12, 2021 and filed a Reply on his behalf. d/e 01/12/2021. In Petitioner's Reply, his attorney did not adopt the argument that there was no federal jurisdiction for the BOP to issue an incident report while Petitioner was in state custody. (D. 21, p. 5). Petitioner's counsel conceded that the BOP did not relinquish custody of the Petitioner when it granted Missouri's request for temporary physical custody of the Petitioner, and agreed Petitioner remained in federal secondary custody at all times. *Id.* Therefore, Petitioner's counsel argues that the only remaining issue is whether Petitioner "knowingly or intentionally escaped from custody." *Id.*

## LEGAL STANDARD

Before losing good credit time, an inmate must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional

goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454 (1985). The Supreme Court has further held that procedural due process requires the decision of the prison disciplinary board be supported by "some evidence." *Id.*

The "some evidence" standard requires only that the decision not be arbitrary or without support in the record. *Hill,* 472 U.S. at 457. In reviewing a decision for "some evidence," courts "are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *Id.* at 455-56. This is a lenient standard, requiring no more than "a modicum of evidence." *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000) (quoting *Hill,* 472 U.S. at 455). It is not the court's place to assess the comparative weight of the evidence underlying the disciplinary board's decision, only whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board. *Webb*, 224 at 652.

**DISCUSSION**

Petitioner does not argue that the disciplinary proceedings lacked procedural protections, but that the decision that an "escape" occurred is not supported by "some evidence". The parties agree that prior to Petitioner's release into state custody he signed an "Acknowledgment," which stated in part: "I am also aware that State officials should not release me into the community" and "If State officials release me or transfer me to any facility, agency, or person other than Federal, I agree to immediately call the following Bureau of Prisons official…." (D. 9-1, p. 27). It is also

undisputed that Petitioner was released into the community for 18 days, and during that time he never contacted the BOP to inform them that he had been released from state custody.

Petitioner argues that the offense of "escape" has a *mens rea* element and that there was no evidence that he "knowingly" or "intentionally" escaped from custody because he was released on state bond. (D. 21, pp. 5-6). In support of this position, Petitioner points to the signed "Acknowledgement" that did not put him on notice that he would be considered an escapee if he was allowed to bond out on state charges. *Id.* at p. 6. Specifically, the Petitioner points to the second paragraph of the Acknowledgement which states:

> I am also aware that State authorities should not release me into the community. If I am released by State authorities into community, I am aware that my federal sentence will not run, and that I will not receive credit for my federal sentence for any period of time I am in the community by the State officials.

(D. 21, pp. 7-6 (citing D. 9-1, p. 27)). What Petitioner fails to recognize, is that the signed Acknowledgement also states: "*I am also aware that State authorities should not release me*", and the following paragraph, which states: "*If State officials release me or transfer me to any facility, agency, or person other than Federal, I agree to immediately call the following Bureau of Prisons official….*" (D. 9-1, p. 27) (emphasis added). This put Petitioner on notice that (1) the State was not to release him, and (2) if the State did release him, he was to immediately let the BOP know of his release.

"Escape" is defined as a voluntary departure from custody with intent to avoid confinement. 18 U.S.C. § 751; *U.S. v. Nix,* 501 F.2d 516, 517 (7th Cir. 1974). The Court finds that the "Acknowledgment" put Petitioner on notice that he was required to immediately contact the BOP if he was released from State custody, and his failure to do so qualifies as "some evidence" from which a DHO could conclude that Petitioner was intentionally avoiding confinement and therefore had "escaped."

Additionally, while the Petitioner claims he does not recall signing the "Acknowledgement," the DHO found his testimony lacked credibility due to the inconsistencies between his statements and the evidence produced by the USMS. (D. 9-1, p. 24). Specifically, Petitioner claimed he turned himself back in after his attorney informed him that he had been released by mistake; however, documents from the USMS state that they found Petitioner near St. Louis, and he was in possession of a weapon when they arrested him. *Id.* As previously stated, it is not this Court's place to assess the comparative weight of the evidence or independently assess witness credibility, but only to determine whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board. *Webb,* 224 F.3d at 652 (emphasis added). Therefore, this Court finds "some evidence" supports the DHO's finding that an escape occurred, and the BOP had the authority to impose sanctions.

## CONCLUSION

For the reasons stated herein, Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (D. 1) is DISMISSED. This matter is now TERMINATED. The Clerk of Court is directed to close the case.

ENTERED April 1, 2021.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge